# Applicability of 18 U.S.C. §§ 431–433 to Limited Partnership Interests in Government Leases

The interests of two Members of Congress under a proposed real estate transaction involving limited partnership interests in government leases would fall within the prohibition of 18 U.S.C. § 431, and the "incorporated company" exception of 18 U.S.C. § 433 does not apply.

February 17, 1998

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
GENERAL SERVICES ADMINISTRATION

This memorandum responds to your request for our opinion on the applicability of 18 U.S.C. §§ 431–433 (1994) to the interests of two Members of Congress in contracts involving government leases under a proposed transaction.[1] Those provisions generally prohibit Members of Congress from entering into or holding contracts with federal agencies and render such contracts void. Specifically, you have asked: (1) whether the interests of the Members under the proposed transaction fall within the scope of 18 U.S.C. §§ 431 and 432; (2) whether the "incorporated company" exception of 18 U.S.C. § 433 is applicable; and (3) whether any or all of four alternatives to the proposed transactions would violate §§ 431 and 432. We conclude: (1) that the interests of the Members under the proposed transaction would fall within the prohibition of § 431; (2) that the "incorporated company" exception does not apply; and (3) that one of the alternatives would not violate § 431.

## I.

The background and pertinent terms of the proposed transaction, as we understand them, are as follows.[2] Two Members of Congress have beneficial interests in several blind or excepted trusts that hold ownership interests in six entities (the "MOC Entities") None of the six MOC Entities currently holds a contract or lease with the Federal Government that would violate 18 U.S.C. §§ 431–433. However, a proposed transaction involving these six entities and two additional entities (the "non-MOC Entities") that do have current leases with federal agen-

---

[1] Letter for Dawn E Johnsen, Acting Assistant Attorney General, Office of Legal Counsel, from Emily C. Hewitt, General Counsel, General Services Administration (Jan. 15, 1998) ("Hewitt Letter").

[2] These facts derive from information provided by you and by counsel for several entities that would contribute their assets under the proposed transaction. To the extent that additional facts are relevant, but have not been described to us, our conclusion could change See Hewitt Letter; Letter for Emily C Hewitt, General Counsel, General Services Administration, from Francis L. Coolidge, Ropes & Gray (Jan 14, 1998) ("Coolidge Letter I"); Letter for Emily C. Hewitt, General Counsel, General Services Administration, from Francis L Coolidge, Ropes & Gray (Jan. 29, 1998) ("Coolidge Letter II")

33

cies has raised the question whether the Members would be considered to hold interests in the leases under the proposed transaction.

The MOC and non-MOC Entities, which are owned and controlled by one family, have proposed entering into a transaction with a publicly traded real estate investment trust (the "REIT"), whereby the entities would contribute their assets to a currently existing limited partnership (the "Operating Partnership"). The REIT owns and manages, and is the sole general partner of, the Operating Partnership. In exchange for their contributions of assets, the entities would receive cash and preferred partnership units (the "OP Units") in the Operating Partnership. Thus, under the transaction, the leases with federal agencies held by the two non-MOC Entities would be contributed to the Operating Partnership.[3]

The OP Units provided to the entities would be a preferred class with a cumulative preference, vis-a-vis the Operating Partnership's common units, as to all distributions from the Operating Partnership. The distribution rate would be set at six percent (plus or minus) of the face value of the OP Units at the time of issuance. Each OP Unit would be convertible into a fixed number of common units of the Operating Partnership, which are redeemable for shares of the REIT or cash at the election of the owners. In addition, the Operating Partnership may unilaterally require conversion of the OP Units into common units ten years after the sale/contribution occurs.

Because leases with the Government would be held by the Operating Partnership under the transaction, and because the Members of Congress, through their trusts, would acquire ownership interests in the OP Units, the question arises whether the Members would hold interests in contracts with the Government in violation of 18 U.S.C. §§ 431–433.

## II.

Section 431 of title 18 prohibits Members of Congress from entering into or holding contracts with any federal agency.[4] It also provides that any contracts made in violation of that section shall be void. Section 432 prohibits federal officers and employees from making contracts with Members of Congress.[5] Section

---

[3] Counsel for the entities also notes that it is possible, though not certain, that the Operating Partnership may have preexisting contracts or leases with federal agencies Coolidge Letter I at 2.

[4] 18 U S C § 431 provides, in relevant part

Whoever, being a Member of or Delegate to Congress, or a Resident Commissioner, either before or after he has qualified, directly or indirectly, himself, or by any other person in trust for him, or for his use or benefit, or on his account, undertakes, executes, holds, or enjoys, in whole or in part, any contract or agreement, made or entered into in behalf of the United States or any agency thereof, by any officer or person authorized to make contracts on its behalf, shall be fined under this title

All contracts or agreements made in violation of this section shall be void, and whenever any sum of money is advanced by the United States or any agency thereof, in consideration of any such contract or agreement, it shall forthwith be repaid .    .

[5] 18 U.S C. § 432 provides

Whoever, being an officer or employee of the United States, on behalf of the United States or any agency thereof, directly or indirectly makes or enters into any contract, bargain, or agreement, with any

433 sets forth certain exceptions to the applicability of §§ 431 and 432, including one for contracts with an "incorporated company for the general benefit of such corporation." [6] Since their initial enactment in 1808, these statutes have barred contracts between federal agencies and Members of Congress or partnerships in which Members of Congress have an interest.[7]

A. *Applicability of 18 U.S.C. § 431*

"Interpretation of a statute must begin with the statute's language." *Mallard v. United States Dist. Court*, 490 U.S. 296, 300 (1989). Section 431's language is broad, extending to the "undertak[ing], execut[ing], hold[ing], or enjoy[ing], in whole or in part" of a contract with the Government by a Member of Congress, "directly or indirectly, himself, or by any other person in trust for him, or for his use or benefit." Thus, Attorneys General and our Office consistently have recognized that the statutory prohibition applies not only to Government contracts that are directly with a Member, but also to such contracts with a partnership in which a Member of Congress is a partner.[8] Government contracts with such partnerships have been considered permissible under § 431 only where the Member of Congress withdraws from the partnership or the Member properly relinquishes all interest in the contract (thus effectively making the contract one with a different partnership not including the Member).[9]

We believe that the interests of the two Members of Congress under the proposed transaction would fall within § 431's prohibitory language, for two reasons.

First, the preferred distribution rights in the OP Units represent ownership interests in the Operating Partnership, which would directly hold the Government

---

Member of or Delegate to Congress, or any Resident 18 U S.C. Commissioner, either before or after he has qualified, shall be fined under this title

[6] 18 U S C. § 433 provides, in relevant part:

Sections 431 and 432 of this title shall not extend to any contract or agreement made or entered into, or accepted by any incorporated company for the general benefit of such corporation . . . .

Any exemption permitted by this section shall be made a matter of public record.

[7] Act of Apr. 21, 1808, ch. 48, § 1, 2 Stat. 484; *see, e.g., United States v. Dietrich,* 126 F 671 (C C.D. Neb. 1904), *Authority of the Reconstruction Finance Corporation to Engage the Legal Services of a Member of Congress,* 38 Op. Att'y Gen 213 (1935); *Members of Congress—Contracts Under Agricultural Adjustment Act and National Recovery Act,* 37 Op Att'y Gen 368 (1933); *Reclamation Service—Contracts—Members of Congress,* 26 Op. Att'y Gen. 537 (1908), *Contract with a Member of Congress,* 4 Op. Att'y Gen. 47 (1842); *Contracts with Members of Congress,* 2 Op. Att'y Gen. 38 (1826), Memorandum for Gerald D. Morgan, Special Counsel to the President, from Herbert Brownell, Jr., Attorney General, *Re: Approval of U S. Senator as a CMS Vendor* (Aug 1, 1955) ("Brownell Mem "). We are not authorized to provide legal advice to Members of Congress or to private persons. However, because the statutes in question also render prohibited Government contracts void and impose penalties upon federal employees, we are providing our legal views in response to your request.

[8] *See* 38 Op. Att'y Gen at 215; 4 Op Att'y Gen. at 49; Memorandum for Robert C MacKichan, Jr., General Counsel, General Services Administration, from Lynda Guild Simpson, Deputy Assistant Attorney General, Office of Legal Counsel at 3 (Aug 3, 1989) ("MacKichan Mem."); Brownell Mem. at 3.

[9] *See* 4 Op Att'y Gen at 49; Letter for Edward M. Shulman, Deputy Solicitor, Department of Agriculture, from J Lee Rankin, Assistant Attorney General, Office of Legal Counsel at 1 (June 8, 1953). Even where the Member of Congress is specifically excluded from any partnership interest in the Government contract, this Office has expressed the caveat that "legality or illegality may depend, not simply upon a contract as it is phrased, but upon the actual working out of the arrangement " *Id* at 2.

leases. The trusts' ownership of the OP Units, therefore, is tantamount to an ownership interest in the Government contracts. Moreover, because the Members of Congress are beneficiaries of the trusts, the trusts' ownership interests are equivalent to the Members' interests for purposes of § 431, which encompasses the holding of Government contracts "indirectly" and "by any other person in trust for [a Member]." The proposed transaction does not entail any segregation of revenues from the Government contracts in the distributions for the OP Units or any relinquishment of such revenues by the trusts. Rather, the distributions would reflect revenues from the Government contracts as well as other revenues generated by the Operating Partnership.[10]

We cannot agree that the statute excludes interests such as those in the OP Units because they are "too remote and contingent" to be covered. Coolidge Letter I at 6. The statute makes no exception for minor interests. It expressly encompasses the "indirect[]" holding, "in whole or in part," of Government contracts by Members of Congress. Moreover, even if such a standard applied, the interests here are not contingent. Thus, the interests in the Government contracts, by virtue of the OP Units, are actual ownership interests covered by the plain language of § 431.

Second, the trusts' interests in the OP Units include a right to convert the OP Units into common units of the Operating Partnership, which in turn are convertible into shares of the REIT. The common units "are identical in all respects to shares of the REIT," Coolidge Letter I at 4, the REIT being the sole general partner of the Operating Partnership. Holders of the common units of the Operating Partnership, like holders of the OP Units, would have an interest in the Partnership and its general income, including that from the Government contracts. Once again, since the income generated by the Government contracts would flow into the Partnership's general funds, a portion of which would be owed to common unit holders, the common units represent ownership interests in the Government contracts. Reconverting the common units into shares of the REIT would not change the result. Although the holder's ownership interest would be directly in the REIT rather than the Partnership, the REIT is the sole general partner of, and thus has ownership in, the Partnership. The ownership interest in the REIT therefore would be an indirect ownership interest in the Partnership, and hence in the Government contracts.

---

[10] The MOC and non-MOC Entities have identified a "modified" version of the proposed transaction to address this problem *See* Coolidge Letter I at 8–9 n 3. Under the modified transaction, the distribution rate of the OP Units held by the MOC trusts would be reduced from six percent (more or less) of the face value of the OP Units to the extent the revenues of the Operating Partnership less any gross revenues from Government leases were insufficient to make those payments. Additionally, gross revenues from Government leases would be segregated so that distributions to the trusts, in all cases, would be made only from revenue other than that derived from Government leases. *See id* ; Coolidge Letter II at 2 This modification avoids the first problem by ensuring that the trusts do not benefit from any Government leases in the distributions for the OP Units—either through the receipt of actual revenues generated by those leases or through the receipt of funds that would not have been paid but for the leases As discussed below, however, the modified transaction does not address the second problem involving the conversion-right feature of the OP Units.

The fact that these interests are in the form of conversion rights does not remove them from the scope of § 431.[11] These conversion rights clearly represent a significant part of the value of the OP Units transferred under the proposed transaction. At any time an owner may exercise its right to convert the OP Units into common units of the Operating Partnership or shares of the REIT. An 1885 Attorney General opinion did conclude that a Member of Congress could serve as a bondsman or surety on a Government contract under the statute because the arrangement gave the Member no "immediate personal interest in [the contract's] benefits." 18 Op. Att'y Gen. at 287. In that situation, however, the Member's potential interest in the underlying Government contract depended entirely on contingencies outside his control. Here, in contrast, the owners would immediately enjoy the value coming from the unfettered ability to effect a conversion that would give them an interest in Government contracts.[12]

### B. *Applicability of 18 U.S.C. § 433*

Section 433 provides that §§ 431 and 432 shall not extend to any contract with "any incorporated company for the general benefit of such corporation." On several occasions, Attorneys General and our Office have deemed particular contracts permissible under this exception; each case involved a *corporation* in which a Member of Congress had some interest.[13] Neither the Operating Partnership nor the REIT is a corporation.[14] Because the pertinent language of § 433 is unambiguous, we reject the contention that the "incorporated company" exception should be interpreted to cover either entity. *See Mallard*, 490 U.S. at 300.

Similar arguments under the same statute have been rejected in the past. Attorney General Cummings concluded that the statute "expressly excepts contracts with 'incorporated companies' and, as applied to unincorporated companies or partnerships, require[s] the application of the rule expressio unius est exclusio alterius." 38 Op. Att'y Gen. at 215. And in rejecting an argument that the "incorporated company" exception had been construed too broadly (as applying to all corporations), Attorney General Cummings again relied on the plain language of

---

[11] The "modified" version of the proposed transaction does not purport to alter the conversion rights attached to the OP Units, and it therefore retains an indirect interest in Government contracts prohibited by § 431. *See. supra* note 10

[12] The value of the conversion right is reflected in the distinction between the third and fourth alternatives to the proposed transaction, under which the trusts would hold promissory notes in lieu of limited partnership interests. The third alternative retains a right of conversion into shares of the REIT common stock, while the fourth alternative includes no such conversion rights. The fourth alternative, however, includes a higher interest rate to compensate for the lack of conversion rights *See* Coolidge Letter I at 10–11.

[13] *See, e.g., Contract with Corporation Partly Controlled by Congressman,* 39 Op. Att'y Gen 165 (1938); *Advances by War Finance Corporation for Raising and Marketing Live Stock,* 33 Op Att'y Gen. 44 (1921); MacKichan Mem at 4–5 & n.10.

[14] The REIT is a Maryland trust with transferable shares Maryland law defines "real estate investment trust" as "an *unincorporated* trust or association formed under this title in which property is acquired, held, managed, administered, controlled, invested, or disposed of for the benefit and profit of any person who may become a shareholder " Md Code Ann., Corps. & Ass'ns § 8–101(b) (emphasis added)

the provision, noting that it had been reenacted several times without modification. 39 Op. Att'y Gen. at 170–71.

Even if Congress did not contemplate the status of limited partnerships and other unincorporated entities when it originally adopted the "incorporated company" exception in 1808, it had occasion to do so when it reenacted the exception in 1874, 1909, and 1948, and when it amended the section in other respects in 1961. *See* Letter for Kent Frizzell, Acting Secretary, Department of the Interior, from Antonin Scalia, Assistant Attorney General, Office of Legal Counsel at 3 n.1 (July 28, 1975). Indeed, Congress has shown that it knows how to specify the treatment of limited partnerships in other conflict of interest statutes, as evidenced by its amendment of title 18, § 208, in 1990, when it substituted the term "general partner" for "partner." *See* Act of May 4, 1990, Pub. L. No. 101–280, § 5(e)(2), 104 Stat. 149, 159. We believe that the phrase "incorporated company" in § 433 must be interpreted in a manner consistent with its plain meaning and that that meaning does not include unincorporated entities.

## C. *Proposed Alternatives*

Four alternatives to the proposed transaction have been outlined by counsel for the MOC and non-MOC Entities.

Under the first alternative, each MOC Entity receiving OP Units and cash would distribute the cash to the owners of the Entity but would retain the OP Units for the benefit of the owners of the Entity (the trusts). Thus, the trusts' ownership interests in the Operating Partnership would be held through a limited liability company. Counsel argues that a limited liability company, like a limited partnership, should be treated as an "incorporated company" for purposes of § 433. Coolidge Letter I at 9–10. A limited liability company, however, is not an incorporated company. For the reasons explained above, the plain language of § 433 does not permit the exception to encompass unincorporated entities such as limited liability companies. This alternative therefore does not avoid the prohibition of § 431.

The second proposed alternative would provide that the trusts contribute their ownership interests in the MOC Entities to one or more S Corporations created for this specific purpose. Attorneys General and this Office have found the "incorporated company" exception of § 433 applicable to several transactions in which the Member's only interest in a Government contract is through ownership in a corporation.[15] Because the statute requires that the Government contract be "for the general benefit of such corporation," however, we have stated that the contract

---

[15] *See, e g ,* 39 Op Att'y Gen. 165 (1938), 33 Op Att'y Gen 44 (1921), MacKichan Mem at 4–6, Letter for Ralph Werner, General Counsel, District of Columbia Redevelopment Land Agency, from Leon Ulman, Deputy Assistant Attorney General, Office of Legal Counsel (Dec 8, 1971); Memorandum for J Lee Rankin, Assistant Attorney General, Executive Adjudications Division, from Edward S Lazowska, Attorney-Adviser, Executive Adjudications Division (Feb 6, 1953).

must be "entered into in good faith on behalf of the corporation rather than for the specific benefit of the congressman." MacKichan Mem. at 5. This Office has concluded that § 433 does not cover a corporation formed specifically to come within the "incorporated company" exception:

> In our view, the answer must be that generally speaking a corpora-
> tion formed primarily for the purpose of avoiding the proscription
> of § 431 should not qualify for the corporate exception of § 433.
> To adopt the opposite position would be to render the statute almost
> meaningless, since any Member of Congress who wished to seek
> Government contracts would be able to do so by simply setting
> up a corporation. Moreover, it may be questioned whether a con-
> tract with a corporation established for the purpose of avoiding
> § 431 could properly be regarded as being "for the general benefit
> of . . . [the] corporation" within the meaning of § 433.

Letter for Kent Frizzell, Acting Secretary, Department of the Interior, from Antonin Scalia, Assistant Attorney General, Office of Legal Counsel at 4 (July 28, 1975). Because the S Corporations contemplated by the second alternative are to be created specifically for this transaction, *see* Coolidge Letter II at 3, and thus to avoid application of § 431, we believe that § 433's "incorporated company" exception would not apply.

The third alternative would be identical to the first, except that the trusts would liquidate their interests in the MOC Entities in exchange for a promissory note issued by the MOC Entities. The note would have the same stated interest rate of 6 percent (plus or minus) as that earned by the MOC Entities from the OP Units. The principal on the note would be due in 15 years (or sooner if the Operating Partnership unilaterally required the conversion of OP Units into common units) and would be convertible into shares of the REIT common stock. Under this scenario, the trusts would not hold any direct interest in the Operating Partnership, but would be creditors of the MOC Entities. We have concluded, however, that the right to convert to shares of the REIT is an interest in the Operating Partnership, and thus an interest in the Government contracts. We have also concluded that shares of the REIT do not fall within § 433's "incorporated company" exception. This alternative therefore would be prohibited by § 431.

The fourth and final alternative would be identical to the third, except that instead of a conversion feature attaching to the promissory note, the note would contain a higher stated interest in order to compensate for the loss of conversion rights. Because the trusts' relationship to the Operating Partnership would simply be a debtor-creditor relationship, the trusts would have no ownership interest in the Partnership or its Government contracts. Instead, the Partnership would owe the trusts the face value of the promissory note irrespective of the Partnership's

receipt of income from the Government contracts. Moreover, the amount due on the promissory note would not be based in any part on the value of any Government contracts held by the Operating Partnership. *See* Coolidge Letter II at 3. This alternative eliminates the indirect interests in the Government contracts created by the conversion rights included in the third alternative. Accordingly, the fourth alternative would not be prohibited by § 431.

## III.

We conclude that the proposed transaction is prohibited by 18 U.S.C. § 431 and that it would not fall within the "incorporated company" exception of 18 U.S.C. § 433. Of the four proposed alternatives to the transaction, the fourth would be permissible under § 431.

BETH NOLAN
*Deputy Assistant Attorney General*
*Office of Legal Counsel*